**Tommy E. SWATE, M.D., Appellant,**

v.

**Jennifer SCHIFFERS, Associated Texas Newspapers, Inc., and William Berger, Appellees.**

**No. 04–97–00902–CV.**

Court of Appeals of Texas, San Antonio.

April 30, 1998.

Tommy E. Swate, El Paso, for Appellant.

Frank C. Vecella, James M. McCown, Jackson Walker, L.L.P., Dallas, for Appellees.

Before HARDBERGER, C.J., and LÓPEZ and GREEN, JJ.

## OPINION

LÓPEZ, Justice.

This appeal originated from a lawsuit for libel brought by Appellant, Dr. Tommy Swate, against a newspaper reporter, a newspaper and the paper's publisher. In his lawsuit, Swate contended his reputation was injured as a result of an article published in a Hondo newspaper. The article was written by Appellee, Jennifer Schiffers, and reported in the *Hondo Anvil Herald,* a newspaper owned by Appellee, Associated Texas Newspapers, Inc., and published by Appellee, William Berger. Swate moved for summary judgment. After responding to Swate's motion, the defendants moved for summary judgment. The trial court subsequently granted the defendants' motion.

Under Rule 166a(c) of the rules of civil procedure, a summary judgment is proper only if the movant establishes that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue exists, thereby excluding summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *See Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669

S.W.2d 309, 311 (Tex.1984). All reasonable inferences from the evidence will be weighed in favor of the non-movant, and any doubts will be resolved in the non-movant's favor. *See Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

A motion for summary judgment must expressly present the grounds upon which it is made. *See McConnell v. Southside School Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). In the instant case, the defendants moved for summary judgment on five grounds: (1) that the statements Swate complained about were not defamatory in view of prior publications about Swate, (2) that the complained of statements were substantially true, (3) that the defendants did not act with malice, (4) that the article was privileged under the Texas libel statute, and (5) that Swate's reputation was so tarnished that he was libel-proof as a matter of law. The trial court granted the defendants' motion for summary judgment without specifying the grounds for its decision. When the court's order does not specify the grounds for the ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Swate raises thirteen issues to challenge the trial court's order granting summary judgment in favor of the defendants. Each of those issues is addressed below.

Swate maintains that three of the statements in Schiffers's article falsely stated that he had committed criminal behavior. As a result, Swate characterizes his lawsuit as libel per se. In his first issue, Swate argues that because his cause of action is libel per se, the defendants were required to prove that the three statements were true in order to prevail. Because he believes the defendants did not prove the statements were true, Swate argues that the trial court erred by granting summary judgment in favor of the defendants.

The Texas libel statute establishes a cause of action for libel if the evidence shows that the writing tended to injure the reputation of the person defamed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997). The effect of pleading libel per se is to eliminate the requirement for pleading or proving special damages, not to shift the burden for proving the falsity of the allegedly defamatory statements. *See Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984). The plaintiff still bears the burden of proving falsity, as well as the other elements of his cause of action. But even if Swate had proved that the statements were false, Swate could not maintain his case because he could not prove injury.

Although courts have been willing to presume injury to reputation as the result of libel per se, *see Leyendecker,* 683 S.W.2d at 374, the defendants rebutted any such presumption in this case. To support their motion for summary judgment, the defendants presented 24 newspaper articles and 3 disciplinary orders from the Texas and Louisiana boards of medical examiners that described Swate's medical practice, his prior litigation involving that practice, and various instances of misconduct. Based on this evidence, the defendants argued that Swate was libel-proof; that is, Swate's reputation was so deplorable prior to the publication of Schiffers's article that the three statements could not have further injured Swate's reputation. We agree that Swate's reputation could not be further damaged by Schiffers's article.

Although the three statements Swate complains about may be false, the earlier newspaper articles and the disciplinary orders describe conduct that would have ruined Swate's reputation prior to the publication of Schiffers's article. For example, one disciplinary order established that Swate had failed to complete abortions performed on several patients, and that he had failed to repair lacerations which occurred during abortion procedures. As a result of this conduct, the Texas Board of Medical Examiners placed Swate on probation for five years. Another order established that Swate continued to function as a physician, despite having been placed on probation, by operating two methadone clinics. These actions, and others, were reported in the numerous newspaper articles that were included in the defendants' summary judgement evidence. While we need not include all of the details of

these articles, let it suffice to say that Swate has been the target of extensive negative media attention for at least ten years, so much so that it is impossible to believe Swate's reputation could have been further damaged by the statements in Schiffers's article. Without injury, the trial court's order granting the defendants' motion for summary judgment was proper. As a result, we overrule this issue.

In addition to the three statements concerning criminal behavior, Swate also complains about five other statements. Those five statements, Swate maintains, falsely state that he engaged in professional misconduct. In his second issue, Swate argues that the defendants presented no evidence that the statements were true or substantially true, and thus the trial court improperly granted summary judgment.

 The libel statute provides a privilege for newspaper defendants like the ones sued in this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.002 (Vernon 1997). Under the privilege, "substantial truth" is sufficient to retain the privilege. *See McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990). However, in determining whether a publication is defamatory, the reviewing court must look at the entire publication rather than at individual sentences or portions of the communication. *See Schauer v. Memorial Care Systems,* 856 S.W.2d 437, 446 (Tex.App.—Houston [1 st Dist.] 1993, no writ).

 To determine whether the article is substantially true, we must consider whether the alleged defamatory statements were more damaging to Swate's reputation, in the mind of the average listener, than truthful statements would have been. *See McIlvain,* 794 S.W.2d at 16. This evaluation focuses on the "gist" of the article. *See id.* at 16. If the underlying facts as to the gist of the article are undisputed, as they are here, then the court can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law. *Id.*

 In the instant case, the gist of the article was that Swate had failed to practice medicine in an acceptable manner, that he

was on probationary status as a doctor, that Medina Community Hospital (MCH) had terminated his employment, and that Swate was suing MCH. The defendants proved the truth of these facts. The agreed orders entered by the Texas Board of Medical Examiners established numerous acts of professional incompetence which injured patients. As a result, the article is substantially true. Even if the eight individual statements were false, they constituted a variance which would not overcome the substantial truth of the article. *See id.* In light of the substantial truth of the article, the effect of the individual sentences would have been no more damaging to Swate's reputation in the mind of the average reader than truthful statements would have been.

For example, Swate complains about the following statement: "In an unrelated case, Swate assaulted a female investigator posing as a patient who was serving him with a subpoena." To prove the falsity of this statement, Swate presented a judgment adjudicating him "not guilty" of assault as charged in the information. Assuming the judgment applies to the assault referred to in Schiffers's article, a truthful statement may have stated that although Swate was charged by information with assaulting a female process server, he was found "not guilty." If this statement was substituted for the one that appears in Schiffers's article, the article would have had the same effect on the mind of the average reader because of the substantial truth of the article. Consequently, we overrule this issue.

 In their motion for summary judgment, the defendants characterized Swate as a limited purpose public figure. Unlike a private-figure plaintiff, a public-figure plaintiff must prove "actual malice" in order to maintain a libel action against a media defendant. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 281, 84 S.Ct. 710, 726–27, 11 L.Ed.2d 686 (1964). In his third issue, Swate contends that a fact issue exists about whether he is a limited purpose public figure. Swate relies on his affidavit wherein he states,

 I have not been an advocate or attempted to influence the resolution of any public

controversies. I have been drawn into court and state action by anti-abortion zealots. I have not been an advocate for any issue that would affect the general public.

Swate contends that because these statements are uncontroverted, the defendants failed to prove that he was a limited purpose public figure. Swate's affidavit, however, is insufficient to characterize Swate as a private figure.

The United States Supreme Court delineated the circumstances under which a person is considered a public figure in *Gertz v. Welch*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3012–13, 41 L.Ed.2d 789 (1974). In *Gertz*, the Court held that a person may become a public figure if: (1) he achieves so much fame or notoriety that he becomes a public figure for all purposes and in all contexts, or (2) he voluntarily injects himself, or is drawn, into a particular controversy and becomes a public figure for a limited range of issues. *See Gertz*, 418 U.S. at 351, 94 S.Ct. at 3012–13. The second circumstance applies to Swate's lawsuit. That is, is Swate a public figure for the issues discussed in the allegedly defamatory communication?

The 24 articles presented by the defendants support the conclusion that Swate is a public figure for the purposes of this lawsuit. These articles date back to 1986 and, if true, describe a medical practice that can only be characterized as atrocious. The type of behavior described by the articles is certainly the type of information that interests the public. Although Swate may not have voluntarily injected himself into controversy, he has certainly been drawn into controversy, so much so that the trial court properly concluded as a matter of law that Swate is a public figure for the purposes of this lawsuit. As a limited purpose public figure, Swate must prove malice to maintain his cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.002 (Vernon 1997).

Considering that so many articles have been written about Swate's medical practice, Swate did not prove malice. Rather the defendants established that the article was motivated by a desire to inform the public about the quality of medical care provided by

Swate and to update the public on the latest development in a continuing controversy about Swate's medical practice. We overrule Swate's third issue.

█ In his fourth issue, Swate again complains about the three statements concerning criminal conduct. Swate contends that the statements are not privileged because the newspaper privilege applies only to true statements, and those three statements are false. In response, the defendants argue that even if the three statements were false, falsity would not defeat the newspaper privilege because the article was not written with malice.

The libel statute provides that:

The publication by a newspaper or other periodical of a matter covered by this section is privileged and is not a ground for a libel action. This privilege does not extend to the republication of a matter if it is proved that the matter was republished with actual malice after it had ceased to be of public concern.

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.002 (Vernon 1997). This privilege applies to a fair, true, and impartial account of: (1) a judicial proceeding, (2) an official proceeding, (3) an executive or legislative proceeding, and (4) other public meetings dealing with public purposes. In their motion for summary judgment, the defendants asserted that Schiffers's article was privileged because it covered a matter of public concern, and because it was a fair and impartial account of an official proceeding and a judicial proceeding. The defendants are correct in these assertions.

Schiffers's article reported Swate's lawsuit against MCH. Schiffers appropriately titled the article "MCH sued by former doctor." In twelve of the first fourteen paragraphs of her article, Schiffers reported the details of Swate's lawsuit against MCH; *i.e.*, Swate's allegations, the basis of his claim, alleged damages. Schiffers next reported the findings of the Texas Board of Medical Examiners and the limitations on Swate's medical practice. Because of this discussion, Schiffers's article addresses both a judicial proceeding (Swate's lawsuit against MCH) and

an official proceeding (action by the Board of Medical Examiners). As a result, the article invoked the newspaper privilege provided in the libel statute.

Although Schiffers's article reported a judicial proceeding and an official proceeding, the remainder of the article has to constitute "reasonable and fair comment on. .[a] matter of public concern published for general information" to maintain the newspaper privilege. *Id.* § 73.001. Schiffers's article commented on a matter of public concern. Following the two sections concerning Swate's lawsuit and the medical board actions, Schiffers reported the prior litigation involving Swate. Beginning this section with, "This is not the first time Swate has been involved in litigation regarding his employment," Schiffers continued in the next twelve paragraphs to discuss the prior litigation. In five other paragraphs, Schiffers discussed related aspects of Swate's past. This part of Schiffers's article reported that several lawsuits were filed against Swate for incomplete abortions, that Swate had been terminated by other Texas hospitals, and that a methadone clinic owned by Swate had been closed. Because this discussion addressed medical care for members of the public, Schiffers's article is properly characterized as addressing a matter of public concern.

In addition to addressing a matter of public concern, the article constituted reasonable and fair comment. Although the article reported Swate's troubles with various hospitals and the medical board, the article also presented Swate's allegations that MCH violated the Texas Open Meetings Act, that a conflict of interest existed between MCH's board president and the person who investigated the allegations that prompted Swate's termination, and that the hospital board failed to follow proper procedures for his termination. The article also included Swate's explanation about why he was terminated from a Houston hospital: that he was terminated because of " 'a personal vendetta, fueled by fear, malice and jealously,' on the part of other staff members at the hospital." In light of these comments, the article fairly and reasonably commented on a matter of public concern. As a result, the newspaper privilege applies to Schiffers's article.

█ To overcome the newspaper privilege, a plaintiff must show malice. *Id.* § 73.002; *see also New York Times,* 376 U.S. at 284, 84 S.Ct. at 728, 11 L.Ed.2d 686. The other articles that have been written about Swate's medical practice, however, prevent Swate from proving malice. When viewed in light of the other articles, Schiffers's article could only be motivated by a desire to inform the public about the quality of medical care provided by Swate and to update the public on the latest development in a continuing saga of medical malpractice. Because Swate did not defeat the defendants' privilege, the trial court correctly granted summary judgment in favor of the defendants. Swate's fourth issue is overruled.

█ In his fifth issue, Swate contends that the trial court erred in granting the defendants' motion for summary judgment because the defendants did not prove he was libel-proof as a matter of law. To support this issue, Swate argues that, where the record does not establish that the plaintiff engaged in anti-social or criminal behavior, the defendant in a libel case is not permitted to use evidence of the plaintiff's bad reputation to justify a libelous publication. Swate contends that he established by clear and convincing evidence that he did not engage in anti-social or criminal behavior, and that as a result, the defendants failed to prove he was libel-proof because the defendants' evidence constituted mere hearsay. Although Swate does not specifically identify the evidence he is referring to, he is undoubtedly referring to the 24 newspaper articles.

Although Swate complains that the defendants' evidence constitute hearsay, the articles are hearsay only if offered to prove the truth of the matter asserted therein. *See* Tex.R. Civ. Evid. 801(d). Offered for other purposes, the articles are admissible as nonhearsay. For example, the articles are admissible to show: that Swate already had a terrible reputation prior to the publication of Schiffers's article, that Swate's reputation was so tarnished that he was libel-proof as a matter of law, that the article was not published with malice, and or that the state-

ments Swate complained about were not even defamatory. *See id.* R. 402 (providing for admission of relevant evidence). As non-hearsay, the articles constitute competent summary judgment evidence.

As competent evidence, the articles prevented Swate from proving malice to defeat the newspaper privilege. As a result, we need not determine if the defendants proved that Swate was libel-proof as a matter of law because the publication was privileged. Thus, the trial court properly granted summary judgment. Because the article was a privileged publication, we overrule this issue.

■ In his sixth issue, Swate maintains that the defendants did not meet their burden as movants for summary judgment because they failed to prove no malice existed. Swate contends that Schiffers's deposition testimony created a fact question about the issue of malice. To make this argument, Swate relies on portions of Schiffers's deposition wherein she responded to questions about the accuracy of the following statement: "According to the article in the *Houston Chronicle* the doctor provided methadone to an undercover agent without obtaining the proper information and prescribed and [sic: and] illegal dose." According to Swate, Schiffers's responses to questions about this statement indicates that she had serious doubts about the accuracy of statements in the article, and contradicts her assertion in her affidavit that she did not entertain any doubts about the truthfulness of any matter reported in the article prior to its publication.

These responses, however, are insufficient to establish a fact question about malice. In her affidavit, Schiffers asserted that she wrote the article to inform the residents of Medina County about Swate's reputation because Swate was treating patients living in that community. She continued to detail the process by which she researched the truth of the article and specifically detailed her process for writing each of the alleged defamatory statements. Contrary to Swate's argument, however, Schiffers's responses in her deposition do not controvert her assertion that she wrote the article to inform the public about an issue of public concern or that she believed the story to be true. Rather

the defendants' summary judgment evidence substantiates the motivation and the investigatory process asserted in Schiffers's affidavit, and proved that no malice existed. Because no malice was proven, we overrule Swate's sixth issue.

■ In his seventh issue, Swate complains about the following statement taken from Schiffers's affidavit:

> According to the *Chronicle*, Swate repeatedly pounded and threw Bobbie Dobyanski, a female process server, against the doors and walls of one of his examining rooms when she tried to serve him with a subpoena. The article further states that Dobyanski had posed as a patient in order to serve Swate with a subpoena. The assault charges against Swate arising from the Dobyanski incident were also detailed by the *Houston Post* (Exhibit "11"). Based upon these articles, I determined that Swate had assaulted Dobyanski while she was attempting to serve him with subpoena.

Based on these statements, Swate contends that the court's order was improper because Schiffers had no personal knowledge. Apparently, Swate means that Schiffers's affidavit was not competent summary judgment evidence because Schiffers had no personal knowledge about the alleged assault on the process server.

■ Affidavits supporting a motion for summary judgment must be based on personal knowledge and show affirmatively that the affiant is competent to testify to the matter stated therein. *See* TEX.R. CIV. PROC. 166a(f). Thus, an affidavit must demonstrate affirmatively how the affiant became personally familiar with the facts asserted therein so as to be able to testify as a witness. *See Fair Woman, Inc. v. Transland Management Corp.,* 766 S.W.2d 323, 323 (Tex.App.—Dallas 1989, no writ). In her affidavit, Schiffers described the process by which she wrote her article. Therein, she discussed her reliance on the other articles that had been written about Swate and her investigation about Swate's medical practice.

As the author of the article, Schiffers was certainly familiar with the facts concerning

why and how she wrote her article. Because Schiffers was personally familiar with her actions and thoughts about writing the article, her affidavit was competent summary judgment evidence even though she may not have had personal knowledge about the facts of the alleged assault as described in the *Chronicle* and *Houston Post* articles. We overrule Swate's seventh issue.

▆▆▆ In the eighth issue, Swate complains that the trial court overruled his objection to the following statement from Schiffers's affidavit: "At the time the Article was published, I believed each of the attached Exhibits to be authentic, reliable, credible, and definitive proof of Swate's background." Swate contends that this statement is not competent summary judgment evidence, apparently because Schiffers did not have personal knowledge of matters asserted in the prior articles or in the disciplinary orders. This complaint is without merit.

Even if Schiffers did not have personal knowledge of the facts underlying the articles and orders, her affidavit demonstrated her reliance upon the other articles and the orders in writing her article, and the defendants substantiated her assertion that she believed the exhibits were definitive of Swate's background. As a result, Schiffers's affidavit is competent summary judgment evidence to prove why and how she wrote the article. This issue is overruled.

▆▆▆ In his ninth issue, Swate complains that his objection about the following statements was overruled:

> Mr. Riney was further quoted by the *Globe* as stating that Swate 'caused them to lose a physician because St. Mary's moved Dr. Albert out after the confrontation (between Swate and Pope).' I therefore concluded that St. Mary's had lost at least one doctor due to Swate's conduct.

Based on these statements, Swate contends in his motion that the article is unsubstantiated opinion evidence and thus incompetent for summary judgment purposes. This argument is without merit. Taken together, these statements describe the process by which Schiffers reached her conclusion— "that St. Mary's had lost at least one doctor

due to Swate's conduct." Although this conclusion appears unsubstantiated standing alone, the process by which Schiffers reached that conclusion is substantiated. The defendants substantiated this conclusion with the article from the *Amarillo Globe*. In pertinent part, the *Globe* article read:

> 'There were two different parts of the contract—one was a duty to cooperate in recruiting other physicians,' Riney said, 'Instead, he caused them to lose a physician because St. Mary's moved Dr. Albert out after the confrontation (between Swate and Pope).'

Thus the article substantiated Schiffers's statement about how she reached her conclusion that St. Mary's had lost at least one doctor due to Swate's conduct. Even if her statement was unsubstantiated, the inclusion of an unsubstantiated opinion does not destroy the probative force of the entire affidavit. *See Lesbrookton, Inc. v. Jackson,* 796 S.W.2d 276, 288 (Tex.App.—Amarillo 1990, writ denied) (finding that even though affidavit contained legal conclusions that could not be considered by trial court, affidavit could be considered for the factual assertions contained therein). This issue is overruled.

In his tenth issue, Swate contends that the articles that constitute the basis of Schiffers's affidavit are hearsay. Because the basis of the affidavit is hearsay, Swate contends that the defendants' evidence was not competent. But as indicated in the discussion about Swate's fifth issue, the newspaper articles are admissible for several purposes other than to assert the truth of the matter contained therein. Offered for one of those other purposes, the articles serve as competent summary judgment evidence. As a result, we overrule this issue.

In his eleventh issue, Swate argues that the trial court erred in granting summary judgment because the affidavit of Jennifer Schiffers, an interested witness, was not clear, positive, direct, credible or free from contradiction and could not be readily controverted. To make this argument, Swate relies on statements from Schiffers's affidavit that he contends conflict with her answers to deposition questions. By comparing these statements, Swate is apparently trying to

show that Schiffers's assertions as reflected in her affidavit could be controverted by direct or cross examination.

Although this is a clever approach for attacking the competency of Schiffers's affidavit, the focus of Schiffers's affidavit is different from the focus of her responses during the deposition. In her affidavit, Schiffers described how and why she wrote her article. She attested to relying on the newspaper articles that had been written about Swate and to believing that the other articles were "authentic, reliable, credible, and definitive proof of Swate's background." But in her deposition, Schiffers was questioned about her personal knowledge of the events reported in those newspaper articles. Because of this distinction, Swate's argument fails. Schiffers's affidavit establishes as a matter of law that she believed her article was true and that she did not act with reckless disregard as to the truth of the article. Swate presented no controverting proof. As a result, summary judgment was proper. This issue is overruled.

 As part of his cause of action, Swate alleged negligence—that Schiffers's article was published with reckless and wanton disregard for his rights. Swate maintains that if Schiffers had properly researched her article, the defendants would have known that the article contained false statements. In his twelfth issue, Swate complains that the trial court erred in granting the defendants' motion because the motion did not address his negligence claim. The trial court, however, was not required to address the matter of negligence because the defendants successfully proved that the article was privileged. Even if his negligence claim was true, the failure to investigate does not establish malice. *See Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 756 (Tex.1984). In the absence of malice to overcome the privilege, the trial court properly granted summary judgment notwithstanding Swate's negligence claim. This issue is overruled.

In his thirteenth and final issue, Swate complains that the trial court erred in sustaining the defendants' objections to his summary judgment evidence. Swate mainly complains that although the defendants ob-

jected to only a portion of various paragraphs of the affidavits comprising his summary judgment evidence, the trial court struck the entire paragraph wherein the applicable sentence(s) was located. We disagree. Although the defendants relied upon a specific statement(s) in each objected to paragraph as the basis for objecting, each objection addressed the entire paragraph. As a result, the trial court's order was consistent with the defendants' objections. After each of Swate's complaints about the court's rulings, we conclude that the court properly sustained the objections. Because a full discussion of Swate's numerous complaints about these rulings would not change our disposition of this appeal in light of the absence of malice to negate the newspaper privilege, we overrule this issue without further discussion.

Having overruled each of Swate's issues, we affirm the trial court's judgment.