In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-460 CV


____________________



MUSTANG ATHLETIC CORP. individually and d/b/a MUSTANG


SPORTS AND/OR MUSTANG ATHLETIC CLUB, Appellant



V.



KAREN MONROE individually and a/n/f of CAMERON MONROE, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-12-07660 CV






O P I N I O N


 Karen Monroe (Monroe) brought suit individually and as next friend of her son
Cameron Monroe against Mustang Athletic Corporation, individually and d/b/a Mustang
Sports and/or Mustang Athletic Club (Mustang) for negligence arising from injuries Cameron
sustained at Mustang's indoor roller skating rink and on behalf of Cameron from defamation
relating to a newspaper article about the accident. Cameron was with a group of boys at
Mustang's indoor skating rink/hockey arena when some of the boys raised one of the
Plexiglas panels surrounding the rink. Cameron stuck his hand under the raised panel and
when one of the boys dropped it, Cameron lost the tip of his pinkie finger. Subsequently,
Paula Crowson, general manager of Mustang, reportedly told a reporter from a local paper
"Cameron was one of a group of boys who were actually trying to disassemble the Plexiglas
and deface and vandalize Mustang's property." The injury Cameron sustained to his finger
and the statement made by Crowson gave rise to Monroe's action against Mustang. Monroe
also brought suit against Tennis Surfaces, the manufacturer of the skating rink system, which
settled on the eve of trial. Prior to trial, the trial court granted partial summary judgment in
favor of Monroe on the liability portion of the defamation claim, finding the statement in
question was defamatory per se. The case was tried to a jury and the jury found both
Mustang and Cameron were negligent on the personal injury claim, and awarded an amount
less than the settlement credit provided by Tennis Surfaces' settlement amount. The jury
awarded Cameron $1,000 in actual damages for injury to reputation for the statement the trial
court determined to be defamatory per se. The jury further found the statement was made
with malice and awarded $71,000 in exemplary damages. In accordance with those findings,
the trial court entered judgment from which Mustang now appeals. Mustang brings six issues
on appeal.

 Mustang's first issue claims there is no evidence to support the jury's finding of
malice and therefore the trial court erred in awarding exemplary damages. The jury found
the defamatory statement was made with malice. The jury was instructed: (1)

 "Malice" means an act or omission by Mustang,

 

 a. which, when viewed objectively from the standpoint of
Mustang at the time of its occurrence, involved an
extreme degree of risk, considering the probability and
magnitude of the potential harm to Cameron Monroe;
and

 

 b. of which Mustang had actual, subjective awareness of the
risk involved, but nevertheless proceeded with conscious
indifference to the rights or welfare of others


 The evidence establishes that Paula Crowson made the statement based upon reports
of the incident by employees of Mustang, Alma Arroyo and Eric Mailhot. According to
Crowson's testimony, it was her conclusion that what she was told the boys were doing
constituted vandalism. However erroneous Crowson's conclusion, the evidence does not
show that the act of making the statement was likely to result in serious harm and that
Crowson was consciously indifferent to the risk of harm. See North Am. Van Lines, Inc. v.
Emmons, 50 S.W.3d 103, 128 (Tex. App.--Beaumont 2001, pet. denied). The evidence does
not support the jury's finding of malice and therefore does not support the award of
exemplary damages. Issue one is sustained.

 In its second issue, Mustang contends there is no evidence to support the award of
actual damages for injury to Cameron's reputation and character. The jury awarded Cameron
$1,000 in actual damages for injury to his reputation and character. Because the statement
was determined by the trial court to be defamatory per se, Cameron is entitled to recover
without proof of injury. See Leyendecker, 683 S.W.2d at 374. "The law presumes a
statement which is libelous per se defames a person and injures his reputation." Id. 

 Mustang acknowledges Leyendecker but cites Swate v. Schiffers, 975 S.W.2d 70, 74
(Tex. App.--San Antonio 1998, pet. denied), for the proposition that plaintiffs were still
required "to have introduced more than a mere scintilla of competent evidence that
Cameron's reputation and character were harmed." In Swate, the court noted that even
though the statements may have been false, Swate's reputation was so deplorable prior to
publication it could not have been further injured. Id, 975 S.W.2d at 74. The court found
"[a]lthough courts have been willing to presume injury to reputation as the result of libel per
se, see Leyendecker, 683 S.W.2d at 374, the defendants rebutted any such presumption in this
case." Id. The court cited no authority for its position the presumption was rebuttable. Even
so, Swate does not require plaintiffs to provide evidence of injury in a per se case but allowed
the presumption of injury to be rebutted by evidence that Swate's reputation was already
ruined. Id. As the court noted, Swate had "been the target of extensive negative media
attention for at least ten years, so much so that it is impossible to believe Swate's reputation
could have been further damaged by the statements. . .." Id. at 75. The facts of this case are
obviously distinguishable from Swate.

 In its reply brief, Mustang cites a recent decision from the Tyler Court of Appeals,
Bunton v. Bentley, 2003 WL 21831533 (Tex. App.--Tyler 2003, pet. filed) (not yet released
for publication), for the proposition that "a jury may not ignore undisputed facts and
arbitrarily fix an amount of damages which is neither fair nor just. There must be some
evidence to justify the amount awarded." Id. at *1 (citations omitted). However, Mustang
does not challenge the amount awarded for actual damages. Instead, Mustang is challenging
whether there was any injury, in effect, challenging the presumption.

 Bunton recognizes that in the case of slander per se, "no independent proof of damage
to the plaintiff's reputation or of mental anguish is required, as the slander itself gives rise
to a presumption of these damages." Bunton, 2003 WL 21831533, at *1. The court, citing
Swate, 975 S.W.2d at 74, noted there was evidence rebutting, "at least in part, the
presumption of injury to [Bentley's] reputation." Id. at *2. However the court did not find
there was insufficient evidence of injury. Indeed, it could not because in Bentley v. Bunton,
94 S.W.3d 561, 604 (Tex. 2002), the Texas Supreme Court held Bunton's statements were
defamatory per se and "[a]s a matter of law then, Bentley was entitled to recover actual
damages for injury to his reputation and for mental anguish." Bunton recounts that the higher
court "stated, as a matter of law, Bentley is entitled to recover actual damages for injury to
his reputation and for mental anguish. It remanded the case to this court to reconsider the
excessiveness of the jury's award of mental anguish damages. . .." Bunton, 2003 WL
21831533 at *1. The court went on to find the amount of the jury's award, $7 million, for
mental anguish was unsupported by the evidence and suggested remittitur. Id. at *2.

 In Leyendecker and Bentley, the Supreme Court of Texas held statements which are
defamatory per se entitle a plaintiff, as a matter of law, to recover actual damages for injury
to reputation. The Supreme Court of Texas has not held that presumption is rebuttable. To
the extent Bunton suggests otherwise in its dicta, it is in conflict with Bentley. To the extent
Swate is at variance with Bentley, we decline to follow it. See Columbia Valley Reg. Med.
Ctr. v. Bannert, 112 S.W.3d 193, 199 (Tex. App.--Corpus Christi 2003, no pet.)("Classifying
a defamatory statement as libel per se relieves the plaintiff of the necessity of proving an
injury as a result of the statement."). See also Fox v. Parker, 98 S.W.3d 713, 726 (Tex.
App.--Waco 2003, pet. denied); Minyard Food Stores, Inc. v. Goodman, 50 S.W.3d 131,
140-41 (Tex. App.--Fort Worth 2001), rev'd in part on other grounds, 80 S.W.3d 573 (Tex.
2002); Knox v. Taylor, 992 S.W.2d 40, 60 (Tex. App.--Houston [14th Dist.] 1999, no pet.);
and Mitre v. Brooks Fashion Stores, Inc., 840 S.W.2d 612, 620 (Tex. App.--Corpus Christi
1992, writ denied) overruled on other grounds by Cain v. Hearst Corp., 878 S.W.2d 577
(Tex. 1994). Issue two is overruled.

 Mustang's third issue claims the trial court erred as a matter of law in granting
Monroe's motion for partial summary judgment finding the statement at issue was
defamatory per se, and in denying Mustang's motion for partial summary judgment. 
Mustang moved for partial summary judgment on the grounds that (1) Mustang did not
defame Cameron; (2) the statement complained of did not constitute defamation per se; (3)
Mustang rebutted the presumption of damages; and (4) the Monroes consented to the
statement. Ground three is covered in Mustang's second issue on appeal and ground four is
dealt with in Mustang's sixth issue. Accordingly, we do not address those arguments here. 
Grounds one and two are encompassed in our consideration of whether the trial court
correctly granted Monroe's motion for partial summary judgment.

 Relying solely on Christy v. Stauffer Publications, Inc., 437 S.W.2d 814, 815 (Tex.
1969), Mustang claims "[a] statement that charges a person with the commission of a crime
is considered defamatory or libelous per se only if the crime impugned is punishable by
imprisonment." Mustang argues because criminal mischief is only punishable by
imprisonment if it involves property damage greater than $50 and the evidence was
undisputed that Mustang suffered less than $50 in damages, the imputed crime is not
punishable by imprisonment, thus the statement is not defamation per se. See Tex. Pen.
Code Ann. § 28.03 (Vernon Supp. 2004). Mustang's argument depends upon this court
agreeing that Christy held a statement is defamatory per se only if the imputed crime is
punishable by imprisonment. 

 The court in Christy declared "[t]o charge one falsely with the commission of any
crime for which he may be punished by imprisonment is slander or libel per se." Id, 437
S.W.2d at 815. Numerous cases contain similar language. See Pisharodi v. Barrash, 116
S.W.3d 858, 863 (Tex. App.--Corpus Christi 2003, pet. filed); Rogers v. Cassidy, 946 S.W.2d
439, 446 (Tex. App.--Corpus Christi 1997, no pet.) disapproved of in part on other grounds,
Huckabee v. Time Warner Entertainment Co., L.P., 19 S.W.3d 413, 423 (Tex. 2000);
McBride v. New Braunfels Herald-Zeitung, 894 S.W.2d 6, 9 (Tex. App.--Austin 1994, writ
denied); Marathon Oil Co. v. Salazar, 682 S.W.2d 624, 630 (Tex. App.--Houston [1st Dist.]
1984, writ ref'd n.r.e.); and Poe v. San Antonio Exp.-News Corp., 590 S.W.2d 537, 541 (Tex.
Civ. App.--San Antonio 1979, writ ref'd n.r.e.). Just as many do not and simply declare that
false imputation of a crime constitutes defamation per se. See Minyard Food Stores, Inc., 50
S.W.3d at 140; Lozano v. Lozano, 983 S.W.2d 787, 793 (Tex. App.--Houston [14th Dist.]
1998), aff'd in part, rev'd in part on other grounds, 52 S.W.3d 141 (Tex. 2001); Gray v.
HEB Food Store No. 4, 941 S.W.2d 327, 329 (Tex. App.--Corpus Christi 1997, writ denied);
Bennett v. Computer Assoc. Intern., Inc., 932 S.W.2d 197, 200 (Tex. App.--Amarillo 1996,
writ denied); Mitre, 840 S.W.2d at 620; Wenco of El Paso/Las Cruces, Inc. v. Nazario, 783
S.W.2d 663, 665 (Tex. App.--El Paso 1989, no writ); Outlet Co. v. Int'l Sec. Group, Inc., 693
S.W.2d 621, 624 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.); and Glenn v. Gidel, 496
S.W.2d 692, 698 (Tex. Civ. App.--Amarillo 1973, no writ). In the case of Rodriguez v.
Printone Color Corp., 982 S.W.2d 69, 73 (Tex. App.--Houston [1st Dist.] 1998, writ denied),
the court did both.

 We are aware of no authority, and Mustang refers us to none, wherein the court's
finding of defamation depended upon whether the crime was punishable by imprisonment. 
There is simply no indication the Christy court intended to exclude from liability those who
falsely charge others with the commission of a crime if it later turns out that crime is not
punishable by imprisonment. Issue three is overruled.

 Issues four and five concern the award of exemplary damages. Our disposition of
issue one makes it unnecessary to address these issues.

 Issue six contends the trial court erred in refusing a jury question on Mustang's
affirmative defense that the Monroes consented to the publication of the newspaper article. 
Mustang's requested question reads:

 Do you find from a preponderance of the evidence that the Plaintiffs
consented to the publication of The Conroe Courier/The Villager article?


 Answer "Yes" or "No."


Appellees argue the tendered questions incorrectly framed the issue for the jury, therefore
Mustang has waived error on this point. Mustang fails to address this charge in its reply brief
and in its brief Mustang only states it "submitted a jury question on the affirmative defense
of consent in substantially correct form." Mustang does not explain how the Monroe's
consent to publication of the article would constitute "'consent of another [the person
defamed] to the publication of defamatory matter concerning him . . .. Restatement (2d)
of Torts § 583 (1977).'" Smith v. Holley, 827 S.W.2d 433 (Tex. App.--San Antonio 1992,
writ denied). The question submitted by Mustang would not establish whether the Monroes
had reason to believe anyone at Mustang would accuse their son of a crime. See Free v.
American Home Assur. Co., 902 S.W.2d 51, 54 (Tex. App.--Houston [1st Dist.] 1995, no
writ); Saucedo v. Rheem Mfg. Co., 974 S.W.2d 117, 121 (Tex. App.--San Antonio 1998, pet.
denied); and Duncantell v. Universal Life Ins. Co., 446 S.W.2d 934, 937 (Tex. Civ. App.--Houston [14th Dist.] 1969, writ ref'd n.r.e.).

 Rule 278 provides that "[f]ailure to submit a question shall not be deemed a ground
for reversal of the judgment, unless its submission, in substantially correct wording, has been
requested in writing and tendered by the party complaining of the judgment . . .." Tex. R.
Civ. P. 278 (emphasis added). See Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 791
(Tex. 1995). The question submitted by Mustang would not have resulted in findings
necessary to establish the affirmative defense of consent. Mustang's failure to submit a
properly worded jury question constitutes waiver of that defense. See also Cosgrove v.
Grimes, 774 S.W.2d 662, 666 (Tex. 1989). See C.T.W. v. B.C.G., 809 S.W.2d 788, 798-99
(Tex. App.--Beaumont 1991, no writ). Accordingly, the trial court did not err in refusing the
question and issue six is overruled.

 We modify the judgment of the trial court to delete the award of exemplary damages
in the amount of $71,000. The judgment is AFFIRMED AS MODIFIED.



 _________________________________

 DON BURGESS

 Justice


Submitted on February 5, 2004

Opinion Delivered May 13, 2004



Before McKeithen, C.J., Burgess and Gaultney, JJ.




 

DISSENTING OPINION


 

 I respectfully disagree with the majority's resolution of issues two and three. (2) The
majority holds there is no need for proof of damages to reputation because the statement is
defamatory per se. I would hold the statement is not defamatory per se, and the law requires
evidence of actual injury to reputation. 

 A twelve year old was said to have been involved in the disassembly of a Plexiglas
wall at a skating rink, a disassembly labeled by the manager of the rink as "vandalism." The
newspaper article reported that "According to the family, [the twelve year old child] and a
group of boys were taking a break from skating to talk, and lifted up one of the Plexiglas
panels that line the rink. One of the boys let go of the panel, however, which dropped down
and chopped off the top portion of [the child's] pinky finger on his left hand." The article
stated that "The Monroes said their biggest concern was that there were no warning signs or
precautionary measures taken to keep children from lifting the Plexiglas panels." Then the
article reported the statement which the trial court found to be defamatory per se: The
manager "claimed that [the child] was one of a group of boys who were actually trying to
disassemble the Plexiglas and deface and vandalize Mustang's property." 

 The article reported the manager denied the Plexiglas was defective. The article then
talked about liability issues, safety measures and Mustang's contact, or lack of contact, with
the family after the accident. The majority's affirmance of the trial court's summary
judgment presumes the statement in question accuses the child of a crime; the majority
focuses its conclusion of defamation per se on "no authority" that "the court's finding of
defamation depended upon whether the crime was punishable by imprisonment." 

 The context in which the word was used must be considered. In libel actions, the trial
court's initial determination is whether the words used are reasonably capable of defamatory
meaning. See Ezrailson v. Rohrich, 65 S.W.3d 373, 376 (Tex. App.--Beaumont 2001, no
pet.). The alleged defamatory statement is to be considered as a whole and in light of the
surrounding circumstances; the determination is based upon how a person of ordinary
intelligence would perceive the entire statement. Id. The statement's meaning, and whether
it is defamatory, depends on a reasonable person's perception of the statement in the context
of the entirety of the publication. See Bentley v. Bunton, 94 S.W.3d 561, 579 (Tex. 2002);
Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000); Musser v. Smith
Protective Servs., 723 S.W.2d 653, 655 (Tex. 1987); Guisti v. Galveston Tribune Co., 105
Tex. 497, 150 S.W. 874, 878 (1912); Ezrailson, 65 S.W.3d at 376. In this case, the proper
focus is on the entire newspaper article in which the manager's statement appears and not on
an isolated word. See Musser, 723 S.W.2d at 655.

 Given the context of the manager's statement, I do not believe a reader would perceive
the use of the word "vandalize" as accusing the child of committing "criminal mischief," as
the majority assumes. The statement was published in an article about the child's physical
injury, and about who might be responsible for the accident. A reasonable reader would, in
the context of the article, understand that the manager meant the child was responsible for
his injury, not that the child was a criminal. I would hold the manager's statement reported
in the article does not rise to the level of accusing the child of so major a social disgrace that
damage to his reputation may be presumed as a matter of law. 

 Appellant asserts there is no evidence to support the award of actual damages for
injury to the child's "reputation and character." Appellees argue the law presumes injury,
and in a footnote say "it is hard to imagine how the Monroes could have produced such
evidence if it were required. The witnesses available to the Monroes -- friends, relatives, and
classmates of [the child] -- all knew him and, naturally, did not believe the false accusation."
(emphasis in original). But if there is no possibility of proving the child's "reputation and
character" were injured, what is the basis for the award of damages? Even if injury is to be
presumed, the presumption should be rebuttable, not conclusive. I respectfully dissent. 

 

 _________________________________

 DAVID B.GAULTNEY

 Justice


Dissent Delivered

May 13, 2004
1. We do not approve this instruction, but appellees do not complain of it on appeal. 
In the context of a defamation case, the "malice" that must be shown to sustain an award of
exemplary damages is different. See Bentley v. Bunton, 94 S.W.3d 561, 604 (Tex. 2002);
Leyendecker & Assoc., Inc. v. Wechter, 683 S.W.2d 369, 375 (Tex. 1984); Scripps Texas
Newspapers L.P. v. Belalcazar, 99 S.W.3d 829, 839 (Tex. App.--Corpus Christi 2003, pet.
denied); and Akin v. Santa Clara Land Co., Ltd., 34 S.W.3d 334, 341 (Tex. App.--San
Antonio 2000, pet. denied). 
2. I concur in the majority's resolution of issues one, four, five, and six.