

NUMBER 13-11-00622-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS
# CORPUS CHRISTI – EDINBURG

___

JAIME MENDEZ,                                                    Appellant,

v.

PAUL C. KAVANAUGH,                                              Appellee.

___

**On appeal from the 445th District Court
of Cameron County, Texas.**

___

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Jaime Mendez, challenges the trial court's summary judgment in favor of appellee, Paul C. Kavanaugh, in a libel case. By two issues, Mendez argues that Kavanaugh failed to conclusively establish his affirmative defense of qualified privilege. We affirm.

## I. BACKGROUND

Both parties are residents of Acacia Lake Townhouses in Brownsville, Texas.

Kavanaugh was the president of the Acacia Lake Townhouses Homeowners' Association ("ALTHA") prior to Mendez being elected president of ALTHA in March 2007. Prior to Mendez's election, Kavanaugh had undertaken an investigation of "perceived irregularities" on the part of ALTHA's treasurer, Sandra Walsdorf. When Mendez took over as ALTHA president, Kavanaugh asked Mendez to cooperate with the investigation by providing certain banking and financial records. Mendez declined to cooperate. Kavanaugh subsequently contacted the Brownsville Police Department and pressed charges against Mendez and Walsdorf for embezzlement, fraud, and other offenses.

On August 31, 2007, Kavanaugh authored a memorandum addressed to the ALTHA members and its counsel, which was posted on the ALTHA bulletin board. The memorandum read:

> It has become very apparent to me that the treasurer of the ALTHA, Ms. Sandra Walsdorf, and the current president of ALTHA, have no desire to allow the members of the ALTHA to know what is going on with the finances.
>
> For that reason, and based on the evidence I am enclosing in this memo, I have found myself obligated to file charges against Ms. Walsdorf and Mr. Mendez for embezzlement, fraud, conspiracy to use ALTHA funds in an illegal manner, and for making false presentations of ALTHA finances to the owners/members of the Association.
>
> If any owner/member of the Association wishes to obtain a copy of the charges that I have formally filed with the City of Brownsville Police Department they may do so by referencing the case # written on the above from [sic].

The Cameron County District Attorney declined to pursue a criminal prosecution in the matter.

Mendez filed his libel suit against Kavanaugh on January 22, 2008, seeking actual and exemplary damages. On June 27, 2011, Kavanaugh filed his first amended

2

motion for traditional summary judgment, contending that he was entitled to judgment as a matter of law based on the affirmative defense of qualified privilege. The summary judgment motion contained an affidavit by Kavanaugh stating, in relevant part, as follows:

> In 2006, I was . . . elected the [ALTHA] board President. After reviewing financial records and an audit pertaining to the calendar year 2006, I became suspicious of certain irregularities I noticed on behalf of the Treasurer, Sandra Walsdorf. I noticed for example that in 2005 Ms. Walsdorf did not pay the association for her portion of the property insurance. I also noticed she did not pay her maintenance fees. Later I learned Ms. Walsdorf was claiming she had made a personal loan to the homeowner's association and that she was repaying herself from association funds. There were no records of any loan made by Ms. Walsdorf.

> In the following months and years, I conducted an internal investigation. I obtained copies of some of the supporting documents that I needed, but many of the documents were not provided to me even after repeated requests. I requested that the then President, Jaime Mendez, provide me access to banking records and other financial records. He refused to cooperate with me. He constantly sided with and protected Ms. Walsdorf. I documented these instances of interference and advised all concerned. . . .

> To this day, I stand by the investigation. I continue to stand by the statements made in my memorandum of August 31, 2007. I believe all of those statements are true and correct. . . .

> In the end, the District Attorney's Office of Cameron County advised me that they were not going to pursue this matter but that I and/or the board of directors of [ALTHA] could file a civil lawsuit against Ms. Walsdorf to recover the funds for which she was not able to account. Neither the Brownsville Police Department nor the Cameron County District Attorney's office ever found any evidence that Ms. Sandra Walsdorf had given a loan to the homeowners' association.

> I do not understand why the District Attorney's office did not pursue my complaint to the end. I therefore disagree with their decision to do nothing. Because of the evidence that I possess and have presented to the other homeowners I continue to believe that Ms. Walsdorf committed fraud against the association.

In response to Kavanaugh's motion, Mendez pointed to a statement made by

3

Kavanaugh, in response to a discovery request, that "[t]o my knowledge Mr. Mendez did not ever directly embezzle funds from [ALTHA]." Mendez also filed his own affidavit in which he describes "an ongoing history of intimidation and harassment not only to myself but other ALTHA members by Kavanaugh" and insists that the criminal charges filed against him by Kavanaugh are "completely false." The affidavit also refers to an email sent by Kavanaugh explaining that Kavanaugh would drop the criminal charges if Mendez provided ALTHA bank statements for November and December of 2001 and January of 2008.

The trial court granted Kavanaugh's summary judgment motion on August 31, 2011, and this appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review a trial court's granting of a traditional summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). In our review, we determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

4

**B. Applicable Law**

Libel is defamation expressed in written form. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011). To maintain a libel cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)). When a defamation plaintiff is a public official or public figure, the United States Constitution requires the plaintiff to establish falsity of the statement. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967); *N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Turner v. KTRK Television*, 38 S.W.3d 103, 116–18 (Tex. 2000). Falsity for constitutional purposes is determined based on whether a statement carries a "provably false factual connotation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *Turner*, 38 S.W.3d at 116.

To be entitled to the affirmative defense of qualified privilege, the person making the statement must make it in good faith on a subject matter in which the speaker has a common interest with the other person, or with reference to which the speaker has a duty to communicate to the other. *Grant v. Stop-N-Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Galveston County Fair & Rodeo, Inc. v. Glover*, 880 S.W.2d 112, 120 (Tex. App.—Texarkana 1994, writ denied)). The privilege applies as long as the communication passes only to persons having an interest or duty in the matter to which the communications relate. *Id.* (citing *Randall's Food Mkts.*, 891 S.W.2d at 646). The privilege is lost if the person claiming it does not

5

act for the purpose of protecting the common interest. *Id.* (citing *Hardwick v. Houston Lighting & Power Co.*, 881 S.W.2d 195, 199 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.)).

The privilege is also inapplicable if the statement is made with actual malice. *Id.* In the context of defamation, "actual malice" is a term of art distinct from traditional common-law malice and does not include ill will, spite, or evil motive. *Alaniz v. Hoyt*, 105 S.W.3d 330, 346 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 771 (Tex. 1994) (per curiam); *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 291 (Tex. App.—Corpus Christi 2000, pet. denied)). Instead, "actual malice" means that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 155 (Tex. 2004) (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000)). "Reckless disregard" is a subjective standard, focusing on the defendant's state of mind. *Isaacks*, 146 S.W.3d at 162. Mere negligence is not enough. *Id.* Rather, the plaintiff must establish that the defendant in fact entertained serious doubts as to the truth of his publication, or had a high degree of awareness of the probable falsity of the published information. *Id.*

**C.     Analysis**

**1.     Actual Malice**

By his first issue, Mendez argues that Kavanaugh was not entitled to judgment as a matter of law on his qualified privilege defense because he failed to conclusively establish that he acted without actual malice.

In response, Kavanaugh first asserts that the August 31, 2007 memorandum could not have been defamatory because it did not state that Mendez actually

6

committed crimes; rather, it merely stated that Kavanaugh had filed charges with police alleging that Mendez committed crimes. We do not find this argument persuasive. A statement is defamatory if it tends to injure one's reputation, exposing one to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach a person's honesty, integrity, virtue, or reputation. *Montemayor v. Ortiz*, 208 S.W.3d 627, 651 (Tex. App.—Corpus Christi 2006, pet. denied); *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.). Whether a statement is defamatory depends on whether a person of ordinary intelligence would perceive the entire statement as so affecting the reputation of the plaintiff. *See Carr*, 776 S.W.2d at 569–70; *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). A "person of ordinary intelligence" is one who "exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications." *Isaacks*, 146 S.W.3d at 157. In determining whether a statement is defamatory, each statement is construed as a whole, in light of surrounding circumstances. *Turner*, 38 S.W.3d at 114; *Musser*, 723 S.W.2d at 654-55. The August 31, 2007 memorandum stated that Kavanaugh, based on his investigation, "found himself obligated to file charges" against Mendez for fraud, embezzlement, conspiring to use ALTHA funds illegally, and making false representations regarding ALTHA's finances. A person of ordinary intelligence would perceive this statement as actually accusing Mendez of committing the named offenses; accordingly, the statement, if false, is per se defamatory. *Christy v. Stauffer Publ'ns, Inc.*, 437 S.W.2d 814, 815 (Tex. 1969) ("To charge one falsely with the commission of any crime for which he may be punished by imprisonment is slander or libel per se"); *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339 (Tex. App.—Beaumont 2004, no pet.).

We next address whether Kavanaugh successfully negated actual malice—and thereby established his entitlement to the qualified privilege—with his summary judgment evidence. A libel defendant can negate actual malice as a matter of law by presenting evidence that he or she did not publish the statement with knowledge of its falsity or reckless disregard for its truth. *See WFAA-TV*, 978 S.W.2d at 574. An affidavit from an interested witness will negate actual malice only if it is "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and [able to be] readily controverted." TEX. R. CIV. P. 166a(c), *see Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). If a defendant has produced competent evidence negating actual malice, the burden will shift to the plaintiff to present controverting proof raising a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c).

We find that Kavanaugh's affidavit conclusively disproved that he "in fact entertained serious doubts as to the truth of his publication." *See Isaacks*, 146 S.W.3d at 162. The affidavit states that Kavanaugh "continue[s] to stand by" the statements in the memorandum. It also reaffirms that Mendez failed to cooperate with Kavanaugh's investigation and refused to provide him with financial records after repeated requests. Mendez's affidavit did not controvert this "clear, positive, . . . direct, [and] otherwise credible" allegation. *See* TEX. R. CIV. P. 166a(c). Mendez did provide evidence, in the form of Kavanaugh's interrogatory response, that Kavanaugh did not believe that Mendez "directly" embezzled funds from ALTHA. However, Kavanaugh correctly notes that it is not necessary, under the penal code, for Mendez to have "directly" embezzled funds in order for him to have committed the crime of embezzlement. *See* TEX. PENAL CODE ANN. § 7.02(a) (West 2011) (describing the law of parties). Instead, Kavanaugh could have reasonably believed, as of August 31, 2007, that Mendez's refusal to

8

cooperate with Kavanaugh's ongoing investigation indicated that Mendez was "acting with intent to promote or assist" Walsdorf in her commission of crimes, which if true would make Mendez criminally liable under the law of parties. *See id.* § 7.02(a)(2), (3). Mendez did not produce evidence in response to Kavanaugh's affidavit to controvert this.

Taking as true all evidence favorable to Mendez and indulging every reasonable inference in his favor, we conclude that Kavanaugh established that the statements in his August 31, 2007 memorandum were made without actual malice, and Mendez did not produce evidence to raise a fact issue. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We overrule Mendez's first issue.

### 2.    Publication to Party With Corresponding Interest or Duty

By his second issue, Mendez contends that Kavanaugh was not entitled to judgment as a matter of law on his qualified privilege defense because he failed to conclusively establish that the August 31, 2007 memorandum was "only communicated to another party having a corresponding interest or duty." *See Grant*, 994 S.W.2d at 874 (citing *Randall's Food Mkts., Inc.*, 891 S.W.2d at 646). In particular, Mendez claims in his affidavit that the memorandum was not only published to the individual members of ALTHA but was also "posted . . . on the communal board at Acacia Lake Townhouses which is open to the public to see." We do not find Mendez's argument persuasive. The memorandum was specifically addressed to "[a]ll owners/members of [ALTHA]" and to ALTHA's counsel. Moreover, "if a defamatory statement is privileged, the casual or accidental presence of a third party will not take it out of the privilege." *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 510 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing RESTATEMENT (SECOND) OF TORTS § 604 cmt. b (1977) ("One privileged to

9

publish defamatory matter may, without abuse of the privilege use a method of communication that involves an incidental publication of the defamatory matter to persons to whom he is not otherwise privileged to publish it, if the method, although not the only way in which the information can be effectively communicated, is customary and sanctioned by business or other necessity."). Accordingly, no fact issue has been raised regarding whether the memorandum was "only communicated to another party having a corresponding interest or duty." We overrule Mendez's second issue.

### III. CONCLUSION

The trial court's judgment is affirmed.


DORI CONTRERAS GARZA
Justice

Delivered and filed the
21st day of August, 2012.