NUMBERS 13-06-258-CV & 13-06-259-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GOVERNMENT EMPLOYEES INSURANCE

COMPANY, ET AL., Appellants,


v.



JON P. PATTERSON, D.C., INDIVIDUALLY

AND ON BEHALF OF ALL OTHERS SIMILARLY

SITUATED, Appellees.

 


On appeal from the 332nd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 In this interlocutory appeal, appellants (1) challenge two April 24, 2006 class
certification orders issued by the trial court: (1) one certifying a "patient class" (2) and (2) one
certifying a "physician class." (3) We conclude the trial court abused its discretion in certifying
both classes. Accordingly, we (1) reverse the order certifying the "patient class" and
dismiss the claim, and (2) reverse the order certifying the "physician class" and remand to
the trial court.

I. Background 


 In 1999, appellee, Jon. P. Patterson, D.C., a chiropractor, sued appellants, alleging
libel per se, tortious interference with contract, and breach of a duty of confidentiality. 
Appellee's claims are based on language contained in letters sent to two of his patients,
Chris Olson and Juan Leal, by claims adjusters for Government Employees. (4) Appellee
asserts that the letters are defamatory because they assert "malpractice and malfeasance"
in his business and profession and suggest he is "incompetent and dishonest in the
exercise of his profession." According to appellee, the letters are false insofar as they
state or infer that he "gave the patient medically unnecessary treatment and charged too
much for it." Appellee claims the letters also constitute tortious interference with the
patient/physician relationship because the letters induced the patient/recipient to breach
his relationship with appellee and refrain from paying for treatment received. Appellee
asserts his libel and tortious interference claims on behalf of a "physician class." Appellee
asserts his breach of the duty of confidentiality claims on behalf of a "patient class,"
contending that the "defendants' practice of disclosing [patient] identities and confidential
communications is unlawful."

 On December 17, 2004, appellants filed a motion for summary judgment and a
combined plea to the jurisdiction and motion to dismiss. In their plea to the jurisdiction,
appellants argued that appellee lacked standing to sue four appellants for libel and tortious
interference because the only two patients identified as receiving the complained-of letter
(Olson and Leal) were insured by Government Employees, and had no relationship to the
other appellants. (5) With respect to appellee's breach of the duty of confidentiality claim,
appellants argued that appellee lacked standing as to all appellants because he is a
chiropractor, not a patient, and any injury resulting from a breach of a patient's
confidentiality is suffered by the patient, not the chiropractor. Appellants also disputed
appellee's assertion that the statute providing that a chiropractor may assert a privilege on
a patient's behalf authorizes a chiropractor to file suit on a patient's behalf. (6) 

 On March 25, 2005, the trial court held a hearing on appellants' motion for summary
judgment and plea to the jurisdiction. At the hearing, appellants argued, among other
things, that the trial court must determine the issue of appellee's individual standing before
considering whether to certify the class. Appellants also argued that appellee lacked 
standing as to some appellants; in response, appellee argued that all five appellants were
"juridically linked" because one regional office administered claims for all five insurance
companies. Appellants noted that appellee had failed to assert any "juridical link" claim 
in his petition, that the pleading deadline had passed, and that the court should therefore
not consider the argument. The trial court agreed that the pleading deadline had passed
and took the matter under advisement. The record does not reflect that the trial court ever
ruled on appellants' plea to the jurisdiction. 

 On April 14, 2005, the trial court held a hearing on appellee's motion for class
certification. In her opening remarks, appellants' counsel reminded the court that the plea
to the jurisdiction remained pending and that the court should rule on the plea to the
jurisdiction before ruling on certification of the classes. Appellee presented expert
testimony by Jack Ratliff, a former law school professor and an expert in class actions. In
the course of testifying, Ratliff identified numerous obstacles to class certification. With
regard to the "patient" class and alleged "wrongful disclosure" of confidential information,
Ratliff noted that the proposed class "would seem to include people who had signed
authorizations [to disclose information] and people who had not;" thus, the proposed class
lacked "the requisite cohesiveness." He also noted that the multi-state nature of both
classes raises an issue regarding the application of multiple statutes of limitations, and that
the trial plan does not specify how this issue would be addressed. Ratliff also noted that
because of the multi-state scope of the "patient" class, there is "a conflict of laws problem,"
and that the issue "could derail this case." 

 Ratliff also opined that appellee lacked standing as the representative of the patient
class because he is not a patient. When appellee's counsel suggested that he could
remedy the problem by naming a new class representative and presenting the new
representative's affidavit to show he is qualified, Ratliff responded that absent an
opportunity for appellants to depose and cross-examine the new representative, such a
procedure "would stand a great chance that that would be thought to be a reversible error
because otherwise there--it's--it's a sort of a stealth representative, nobody has an
opportunity really to test their qualifications." 

 With regard to the "physician" class, Ratliff also noted that the scope of the multi-state class raises the issue of multiple state statutes of limitations. As to appellee's libel
claim, Ratliff testified that in his view, individual questions will overwhelm the common
questions:

So it seems to me you've got a dual problem with libel. You've got the
question of whether the statement is true or false. And each one of these
cases, what the libel has [sic] said to be is you accused me of overcharging
or you accused me of charging more than people around me charge for this
kind of service.


 Well, in order to know whether that charge was reasonable or not,
you've got to know what the service was, how bad the patient hurt, what the
patient's needs were, what other people in the community are--are charging,
how many visits there were, how many visits were really required. Those are
quintessentially individual in [sic] issues that have to be done, in my opinion,
class member by class member. I don't see any way that you could ask
class wide the damages question. 


Ratliff observed that with respect to appellee's libel claim, "[n]othing supports your view that
you can make this case without proving falsity." As to appellee's tortious interference
claim, Ratliff opined that the class could not be appropriately certified because an element
of the claim is causation, which would require individual determination:

[Ratliff]: In this case what that means is, you have to show that the letter that
went out from GEICO kept people--kept a patient from paying the patient's
bill. That involves knowledge of whether the patient ever, in fact, got the
letter, whether the patient read it, what the patient thought it meant. . . . And
after reading it, whether the patient relied on the letter in not paying the bill. 
That's not a question that can be answered once for Ms. Olson and
be--and be answered for everybody in the class as we know the
requirement to be. 


 Further more, in this case you have other evidence, I believe, which
makes this even more problematic, and that is, if I understand it correctly,
as to at least one or two of these class reps, I think the evidence was that
Dr. Patterson never sent them a bill. It's entirely possible that the failure to
receive a bill is the reason they didn't pay this amount and it may not be the
reason. That's an argument between you and the defendants. But it's an
argument they are entitled to make based on these specific facts. . . . 
That's why I think causation is essential to your case. I think it's missing
and I see no way for it to be asked and answered class wide. 


 Appellee also testified at the certification hearing. On cross-examination, he
testified he was unaware that his counsel had proposed a new representative of the patient
class. Appellee also testified that he does not always bill a patient when the bill has not
been paid in full by an insurance company. With regard to the two patients named in the
lawsuit (Olson and Leal), appellee testified he had "no idea" whether a bill was sent to 
those patients.

 The final witness at the certification hearing was appellee's counsel, Bryan Powers,
who testified as to his qualifications as class counsel. On cross-examination, appellants'
counsel asked Powers to admit that he had "now [the morning of the hearing] changed the
definition of the class as well as substituted in a new class rep taking the place of Dr.
Patterson on the patient class[.]" Powers responded that the rules allow the court "at any
time" to "consider who a representative should be" and "make modifications at any time .
. . on what's appropriate for a class definition."

 Appellants' counsel made several arguments against certification, including the
following: (1) appellee's actions in changing the definition of both classes and naming a
new class representative for the patient class--Chris Olson, who was not present to testify 
or answer questions--circumvented appellants' due process rights; (2) the proposed
certification order for the physician class states that it does not consider appellants'
affirmative defenses "because this is not the proper time;" (3) appellee presented no
evidence on choice of law for either of the eight-state classes; (4) appellee is unable to
show causation with regard to the tortious interference claim because there is no evidence
he sent a bill to either of the two named plaintiffs; and (5) appellee has failed to present an
adequate trial plan showing how the claims and defenses will be tried. 

 The trial court took the matter under advisement, and more than a year later, on
April 24, 2006, certified both classes. The order certifying the patient class (1) defines the
class as "all patients whose identity and/or medical records were disclosed to Medata, Inc.
or any medical bill reviewer by the GEICO Dallas Regional Office since May 17, 1997"; (2)
appoints Chris Olson as class representative; (3) states that "[t]he geographical dispersal
of the members of the Patient Class throughout the eight States comprising the GEICO
Dallas Region makes it impracticable to join the individual patients who are in the Patient
Class"; and (4) states that Chris Olson will fairly and adequately represent the interests of
the patient class, and that his interests are "coincident with" those of the patient class. (7) 
The "trial plan" states, in its entirety, that:

1. The Patient Class Representative will present the case to a jury on behalf
of the Patient Class.


2. Unless a directed verdict is appropriate at Plaintiff's rest, the Defendants
will present their defenses, if any, to the jury.


3. Unless a directed verdict is appropriate at the parties' close, the case will
be submitted to the jury based on the evidence admitted at trial.


4. The Plaintiffs' causes of action to be tried are for (1) declaratory judgment
and (2) injunction.


5. The elements of Plaintiffs' declaratory judgment case are (1) there exists
an actual controversy regarding the parties' privacy rights under statute, (2)
a declaratory judgement [sic] will terminate the controversy, (3) Plaintiffs'
attorney fees are equitable and just, and (4) injunctive relief is proper.


6. The jury will be asked to decide all factual issues presented. The court will
determine equitable and just attorney fees, if any.


7. Final judgment will be based on the jury verdict, if any, and the court's
findings. 


 The order certifying the physician class (1) defines the class as "all medical
practitioners to whose patient or other person the GEICO Dallas Regional Office, since
May 12, 1997, sent a form letter with the same wording as the attached form letter Bates-stamped G 0020, enclosing a GEICO Explanation of Benefits"; (2) names appellee as
class representative; (3) states that "[t]he geographical dispersal of the medical-practitioner
members of the Physician Class throughout the eight States comprising the GEICO Dallas
Region makes is impracticable to join the individual medical providers in the Physician
Class"; (4) identifies seven "questions of law or fact" common to the class; (5) states that
appellee's claims are typical of the class; (6) states that "[t]he court does not here consider
defendants' affirmative defenses because this is not the proper time"; (7) states that issues
common to the class predominate over individual issues "because the only individual
question for each Physician Class member is the amount of damages"; and (8) states that
a class action is superior to other methods to adjudicate this case because the members
of the class "are geographically scattered in various jurisdictions of Texas, New Mexico,
South Dakota, North Dakota, Wyoming, Colorado, Kansas, and Nebraska." (8) The one-and-a-half-page "trial plan" lists the elements of libel per se and tortious interference "in this
case," (9) states that the jury will be asked to determine whether certain provisions of the form
letters constitute libel per se or tortious interference, and states that "[t]he jury will also be
asked to determine the defendants' affirmative defenses of justification and privilege."

 In two issues, appellants challenge the trial court's order certifying the patient class,
contending: (1) the trial court lacked subject matter jurisdiction over appellee's claim for
breach of the duty of confidentiality because appellee lacks standing to bring the claim; and
(2) the trial court abused its discretion in certifying the patient class. Similarly, in two
issues, appellants challenge the order certifying the physician class, contending: (1) the
trial court lacked subject matter jurisdiction over appellee's libel and tortious interference
claims with regard to four appellants (GEICO Indemnity, Colonial, Criterion, and GEICO
General) because appellee lacks standing to bring claims for libel and tortious interference
against these four appellants; and (2) the trial court abused its discretion in ordering class
certification of the physician class. 

II. Jurisdiction, Standard of Review, and Applicable Law 


 We have jurisdiction over interlocutory appeals of class certification orders under
section 51.014(a) of the Texas Civil Practice and Remedies Code. (10) Class certification is
governed by rule 42 of the Texas Rules of Civil Procedure. (11) The decision to grant or deny
class certification is within the discretion of the trial court, and we will not reverse the trial
court's decision unless an abuse of that discretion is evident from the record. (12) However,
unlike typical abuse of discretion review, when reviewing the grant or denial of class
certification, we do not indulge every presumption in favor of the trial court's ruling. (13) While
some of the trial court's determinations, such as those based on assessment of the
credibility of witnesses, "must be given the benefit of the doubt," (14) "actual, not presumed,
conformance with [rule 42] remains . . . indispensable." (15) There is no inherent right to
proceed as a class action. (16) Therefore, compliance with rule 42 must be demonstrated, (17)
and we do not err in favor of certification. (18) The trial court must perform a rigorous analysis
and provide a specific explanation for how class claims will proceed to trial. (19) A trial plan
is required in every class certification order "to allow reviewing courts to assure that all
requirements for certification under Rule 42 have been satisfied." (20) To make a proper
analysis, "going beyond the pleadings is necessary, as a court must understand the claims,
defenses, relevant facts, and applicable substantive law in order to make a meaningful
determination of the certification issues." (21)

 In Bernal, the supreme court stated:

All class actions must satisfy four threshold requirements: (1) numerosity
("the class is so numerous that joinder of all members is impracticable"); (2)
commonality ("there are questions of law or fact common to the class"); (3)
typicality ("the claims or defenses of the representative parties are typical of
the claims or defenses of the class"); and (4) adequacy of representation
("the representative parties will fairly and adequately protect the interests of
the class"). In addition to these prerequisites, class actions must satisfy at
least one of the three subdivisions of rule 42(b). (22) 


In this case, the trial court certified the patient class under rule 42(b)(2) (23) and the
physician class under rule 42(b)(3). (24)

III. Analysis 


A. The patient class


 We begin by addressing the trial court's order certifying the patient class. In their
first issue, appellants contend the trial court lacks subject matter jurisdiction over
appellee's claim for breach of the duty of confidentiality because appellee lacks standing
to bring such a claim. We agree.

 In his live petition, appellee asserts that he has standing to bring his claim of
breach of the duty of confidentiality on behalf of his patient, Olson, and the patient class
because state and federal law authorizes him to act on Olson's behalf to protect Olson's
confidential communications with appellee. Although appellee's petition cites only "the
laws of Texas and of the United States" in support of his contention, appellee asserted
that his standing to assert a breach-of-the-duty-of-confidentiality claim on his patients'
behalf derives from section 201.402 (e) of the occupation code. (25) As noted, however,
appellee argued at the class certification hearing that he could "take care of" the standing
"problem" by naming Olson as the representative of the patient class, notwithstanding that
appellee, not Olson, remains the named plaintiff. As appellee requested, the trial court's
order certifying the patient class names Olson as the class representative; accordingly,
appellee argues in his brief that Olson has standing to represent the patient class. 

 "Standing is a prerequisite to subject-matter jurisdiction, and subject-matter
jurisdiction is essential to a court's power to decide a case." (26) "'Standing focuses on the
question of who may bring an action.'" (27) "In contrast, whether a plaintiff would be an
appropriate class representative is determined by Rule 42's requirements that the
representative's claims be typical of the class and that the representative will fairly and
adequately protect the interests of the class." (28) "[W]hether the named plaintiff is a proper
class representative is not part of the standing inquiry." (29) A named plaintiff must first
satisfy the threshold requirement of individual standing at the time suit is filed, without
regard to the class claims. (30) In other words, a plaintiff who lacks individual standing when
suit is filed cannot maintain a class action. (31) "[E]ven named plaintiffs who represent a
class 'must allege and show that they personally have been injured, not that injury has
been suffered by other, unidentified members of the class to which they belong and which
they purport to represent.'" (32) To have standing, the pleader bears the burden of alleging
facts that affirmatively demonstrate the court's jurisdiction to hear the case. (33)

 Here, appellee was the named plaintiff at the time suit was filed, and remains the
named plaintiff. Thus, unless appellee can show that he has personally been injured by
the alleged breach of his patients' privilege of confidentiality, he has no standing to bring
such a claim and the claim must be dismissed. (34)

 We conclude that appellee has failed to show he has standing to bring his breach-of-the-duty-of-confidentiality claim. Other than simply asserting that section 201.402(e)
of the occupation code authorizes him to bring suit on his patients' behalf to protect their
privilege of confidentiality, appellee offers no authority in support of his argument, and we
have found none. Moreover, absent an express provision for a private right of action in
a statute, as is the case with section 201.402, a breach of a statutory duty normally gives
rise to a private right of action on behalf of the injured person (or group of persons) for
whose benefit the statute was enacted. (35) Here, presumably, the statute was enacted to
protect the chiropractic information of patients. We hold that appellee lacks standing to
bring his breach-of-confidentiality claim. We sustain appellants' first issue and dismiss
appellee's claim in appellate cause number 13-06-258-CV.

B. The "physician" class (36) 


 In two issues, appellants contend (1) the trial court lacked subject matter
jurisdiction over appellee's libel and tortious interference claims with regard to four
appellants (GEICO Indemnity, Colonial, Criterion, and GEICO General) because appellee
lacked standing as to those appellants, and (2) the trial court abused its discretion in
certifying the physician class.

 In their first issue, appellants contend appellee lacked standing as to all appellants
except Government Employees because appellee's two patients in this case (Olson and
Leal) were insured only by Government Employees, not by the other four appellants. 
Thus, the two letters which are the basis of appellee's claims were sent only by
Government Employees to adjust the claims of its insureds. Appellants argue that with
respect to the libel claim, appellee cannot show that any of the other four appellants
published any statement, or that he suffered any actual or threatened injury by anything
that they did. Similarly, with respect to the tortious interference claim, none of the four
appellants took any action with respect to appellee or his two patients which could have
caused any injury to appellee or interference with his relationship with his patients.

 In response to appellants' lack-of-standing argument, appellee contends that by
finding his claims "typical of the claims of the Physician class because the claims are
identical," the trial court found he had standing to sue for the physician class. According
to appellee, "as one of those medical practitioners about whom the letters were sent out
by the GEICO Dallas regional office, [appellee] clearly has standing to represent other
medical practitioners about whom the same letters were sent out by the GEICO Dallas
regional office." 

 In several sub-issues, appellants argue, among other things, that: (1) although the 
proposed physician class is a multi-state class, the trial court did not conduct a choice of
law analysis, a failure that defeats the predominance requirement of rule 23(b)(3); (2) the
proposed physician class is not properly defined or objectively determinable; (3) the trial
court erred in certifying the physician class because none of the rule 42(a) requirements--
numerosity, commonality, typicality, and adequacy of representation--were met; (4) the
proposed class fails to satisfy rule 42(b) requirements because challenges to the
"reasonableness" of medical expenses are inappropriate for class certification; and (5) the
proposed trial plan is inadequate because it fails to show how appellee's libel and tortious
interference claims and appellants' defenses will be tried. 

 We begin by addressing appellants' argument that the trial court erred in certifying
the multi-state physician class without conducting a choice-of-law analysis. Initially, we
note that appellee's brief does not include any argument in response to appellants'
contention that the trial court failed to conduct the required choice-of-law analysis. In the
section addressing "numerosity," however, appellee acknowledges that "the geographical
scope of the medical provider distribution includes Texas, New Mexico, South Dakota,
North Dakota, Wyoming, Colorado, Kansas, and Nebraska." Inexplicably, however, in his
reply brief, appellee asserts that "[t]here is no evidence that the Physician Class is a multi-state class." This assertion, however, is contrary to the language of the certification order,
which explicitly refers to the "geographical dispersal of the medical-practitioner members
of the Physician Class throughout the eight States comprising the GEICO Dallas Region." 
The order also states that "the medical practitioners in the Physician Class are
geographically scattered in various jurisdictions of Texas, New Mexico, South Dakota,
North Dakota, Wyoming, Colorado, Kansas, and Nebraska." (37) We conclude that the trial
court order certifying the physician class unequivocally creates a multi-state class. 

 When ruling on motions for class certification, the trial court must conduct an
extensive choice of law analysis before it can determine predominance, superiority,
cohesiveness, and even manageability. (38) If a court does not know which states' laws must
be applied, it cannot determine whether variations in the applicable laws would defeat
predominance in a (b)(3) class action or destroy the cohesiveness of a (b)(2) class. (39) The
class representative bears the burden of presenting the trial court with an extensive
analysis of state law evaluating any differences. (40) Here, nothing in the trial court's order
certifying the physician class suggests that the trial court conducted a choice-of-law
analysis. (41) The trial court's certification of the physician class was based on
predominance. As the supreme court noted in Compaq, "nothing in the record
demonstrates that the court critically analyzed how variations in state law would affect
predominance." (42) We conclude the trial court erred in certifying the physician class
without conducting the choice-of-law analysis required by Compaq. (43) 

 Appellants also contend that the trial court erred in certifying the physician class
because neither the "commonality" requirement of rule 42(a) nor the "predominance"
requirement of rule 42(b)(3) was met. Appellants argue there are no "common" issues of
law and fact that can establish their defenses to either the libel or tortious interference
claims. With respect to the libel claim, appellants assert the defenses of (1) truth of the
alleged defamatory statement (i.e., the "reasonableness" of each medical provider's
medical charges) and (2) that any allegedly defamatory statement was justified by a
qualified or absolute privilege. With regard to appellee's tortious interference claim,
appellants challenge the court's finding that there is a "common" question regarding
whether the letters "attempted to induce the Physician Class members' patients to breach
the contracts to pay the medical practitioners for [their] treatment." Appellants argue that
in a tortious interference claim, a plaintiff must demonstrate causation--that the
defendant's actions proximately caused the plaintiff's loss. (44) Appellants argue that "thus
each provider will have to prove that the reason a given patient did not pay the balance
of a bill was because of GEICO's letter to the patient." According to appellants, 

Thus, each Class member will have to show (a) that the patient received the
bill, (b) that the patient read the letter and understood it to mean that the
patient should not pay the bill, (c) that the patient did not pay the bill, and (d)
that the patient's refusal to pay was the result of (caused by) the letter. 
These elements would be required to prove causation and are specific to
each patient and each letter and cannot be proved on a class-wide basis.


 Before a reviewing court can determine whether individual issues predominate over
common ones, it must consider how to apply the predominance requirement. (45) Therefore,
it is improper to certify a class without knowing how the claims can and will likely be tried. (46)
"A trial court's certification order must indicate how the claims will likely be tried so that
conformance with Rule 42 may be meaningfully evaluated." (47) A trial plan is a part of the
rigorous analysis a trial court performs before ruling on class certification. (48) 

 Here, the certification order states, in part:

THE COURT FURTHER FINDS that the Physician Class meets the
requirements of Rule 42(b)(3) for its request for damages because the
common issues predominate over the individual issues. The court does not
here consider defendants' affirmative defenses because this is not the
proper time. 


 The certification order's "trial plan" states, in part, that:


7. The jury will be asked to determine whether certain provisions of the form
letters with enclosures sent to the Physician Class members from the GEICO
Dallas Regional Office constitute libel per se (49) or tortious interference. . . .
The jury will be asked to determine the defendants' affirmative defenses of
justification and privilege. (50)


8. By damage issues hooked to affirmative findings of defendants' liability
and negative findings on defendants' defenses, the jury will also be asked to
determine (1) presumed damages resulting from for [sic] libel per se, (2)
exemplary damages based on defendants' libel per se and malice.


9. Because the putative defamatory and interfering statements are
contained in the same form letters and enclosures, proof of liability and
damages likely can be established on a broad basis as to the Physician
Class, using documents and summaries of documents retrievable from the
defendants' computer records. (51) 


 We conclude that the certification order's "trial plan" for the physician class does not
adequately address how individual issues will be considered, and thus, does not meet the
requirements of Bernal. "Bernal clearly requires that the certification order contain a plan
for dealing with individual issues, and for the specifics of the plan to be considered by the
trial court in determining whether common issues will predominate over individual issues." (52)

 We hold that the trial court abused its discretion in certifying the physician class
without formulating a trial plan that adequately deals with individual issues. We sustain
appellants' second issue challenging certification of the physician class.

Conclusion 


 In appellate cause number 13-06-258-CV, we hold appellant lacks standing to bring
his breach-of-the-duty-of-confidentiality claim and dismiss the claim. 

 In appellate cause number 13-06-259-CV, we hold the trial court abused its
discretion in certifying the physician class without conducting a choice-of-law analysis and
without formulating a trial plan that adequately deals with individual issues. We note that
appellants have filed a plea to the jurisdiction in the trial court challenging appellee's
standing with respect to four appellants (GEICO Indemnity, Colonial, Criterion, and GEICO
General), and the record reflects no ruling on appellants' plea. If, as appellants contend,
appellee lacks standing as to these four appellants, dispositive issues should be resolved
by the trial court before certification is considered. (53) We reverse the order certifying the
physician class and remand to the trial court for further proceedings consistent with this
opinion. 

 

 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum Opinion delivered and filed 

this the 29th day of November, 2007.

 

 

 

 
1. Appellants are five insurance companies: Government Employees Insurance Company
("Government Employees"), GEICO General Insurance Company ("GEICO General"), GEICO Indemnity
Company ("GEICO Indemnity"), Criterion Insurance Company ("Criterion"), and Colonial County Mutual
Insurance Company ("Colonial"). We will refer to appellants collectively as "GEICO."
2. The order certifying a "patient class" pertains to appellate cause number 13-06-258-CV. 
3. The order certifying a "physician class" pertains to appellate cause number 13-06-259-CV. Both
orders were issued by the same trial court in cause number C-2673-99-F, styled Jon P. Patterson, et al. v.
Government Employees Insurance Company, et al., in the 332nd District Court of Hidalgo County, Texas. 
4. Both Olson and Leal were insured under policies issued by Government Employees. The "form
letter," sent by GEICO to its insureds, states, in pertinent part:


We are enclosing a copy of the explanation of reimbursement that was sent to your health
provider for treatment of injuries you received in the above referenced accident.


The charges were reviewed using a current medical cost and medical utilization data base. 
Our explanation of any adjustment is enclosed. This amount should be considered full
payment for the service indicated. Unless the audit indicates further documentation is
needed, then our audit reflects a reasonable value for service.


Your health provider has been advised this is full payment of services. We have also advised
the provider to contact us directly if there is any disagreement, and we will resolve the matter
for you. 
5. Appellants' Motion and Plea to the Jurisdiction also addresses another claimant, represented by
Attorney Lemuel Lopez. At the class certification hearing, however, appellee's counsel stated that the letter
to Lopez was not included in the claim. 
6. See Tex. Occ. Code Ann. § 201.401(e) (Vernon 2004) (providing that a chiropractor may assert a
privilege on a patient's behalf, but not authorizing a chiropractor to assert a private right of action on a patient's
behalf). 
7. The order states that the patient class is certified under rule 42(b)(2). See Tex. R. Civ. P. 42(b)(2). 
8. The order states that the physician class is certified under rule 42(b)(3). See Tex. R. Civ. P. 42(b)(3). 
9. The order states, in relevant part:


5. The elements of libel per se in this case are (1) publishing a writing that tends to blacken
the memory of the dead or that tends to injure a living person's reputation and thereby
expose the person to public hatred, contempt, or ridicule, or to financially injure the person,
or to impeach the person's honesty, integrity, virtue, or reputation, or to publish the natural
defects of anyone, and thereby expose the person to public hatred, ridicule, or financial injury
and (2) damages presumed to result from the publishing.


6. The elements of tortious interference in this case are (1) the existence of a doctor-patient
contract implied-in-fact to provide treatment for a fee; (2) the defendant intentionally hindered
performance of the contract by making performance impossible, more burdensome, difficult,
or expensive; and (3) foreseeably causing the medical practitioner a financial loss. 
10. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (Vernon Supp. 2006); Cent. Power & Light
Co. v. City of San Juan, 962 S.W.2d 602, 607 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.).
11. Tex. R. Civ. P. 42. Rule 42 was patterned after the federal rule on class actions; therefore, "federal
decisions and authorities interpreting federal class action requirements are persuasive in Texas actions." Ford
Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000).
12. Nissan Motor Co. v. Fry, 27 S.W.3d 573, 580 (Tex. App.-Corpus Christi 2000, pet. denied) (citing
Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996)).
13. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 691 (Tex. 2002) (citing Sw. Ref. Co. v. Bernal,
22 S.W.3d 425, 435) (Tex. 2000)). 
14. Stromboe, 102 S.W.3d at 691.
15. Bernal, 22 S.W.3d at 435 (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982)).
16. Id. at 439; Philadelphia Am. Life Ins. v. Turner, 131 S.W.3d 576, 584 (Tex. App.-Fort Worth 2004,
no pet.). 
17. Stromboe, 102 S.W.3d at 691; Bernal, 22 S.W.3d at 435. 
18. Bernal, 22 S.W.3d at 434-35; Turner, 131 S.W.3d at 585.
19. Stromboe, 102 S.W.3d at 689 (citing Bernal, 22 S.W.3d at 429). 
20. State Farm Mut. Auto Ins. Co. v. Lopez, 156 S.W.3d 550, 555 (Tex. 2004). 
21. Bernal, 22 S.W.3d at 435 (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 742 (5th Cir. 1996)). 
22. Id. at 433 (quoting Tex. R. Civ. P. 42(a)).
23. See Tex. R. Civ. P. 42(b)(2). Subsection (b)(2) of rule 42 requires that "the party opposing the class
has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the class as a whole." Id. 
24. See Tex. R. Civ. P. 42(b)(3). Subsection (b)(3) of rule 42 requires that "questions of law or fact
common to the members of the class predominate over any questions affecting only individual members, and
a class action is superior to other available methods for the fair and efficient adjudication of the controversy." 
Id. 
25. In his "Response to GEICO's Motion to Show Authority," appellee identified section 201.402(e) as
granting him "the authority to assert Chris Olson's confidentiality rights in this litigation." See Tex. Occ. Code
Ann. § 201.402(e) (Vernon 2004). 
26. M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex. 2001) (citing Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 553-54 (Tex. 2000)).
27. Id. (quoting Patterson v. Planned Parenthood, 971 S.W.2d 439, 442 (Tex. 1998)). 
28. Id. (citing Tex. R. Civ. P. 42(a)).
29. Id. at 710.
30. Id. 
31. Id. at 711 ("[I]f the named plaintiff lacks individual standing, the court should dismiss the entire suit
for want of jurisdiction."); Basham v. Audiovox Corp., 198 S.W.3d 9, 14 (Tex. App.-El Paso 2006, pet. denied). 
32. M.D. Anderson, 52 S.W.3d at 708 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40
n.20 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975))).
33. Tex. Ass'n. of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
34. See M.D. Anderson, 52 S.W.3d at 711.
35. Lively v. Carpet Servs., 904 S.W.2d 868, 871 (Tex. App.-Houston [1st Dist.] 1995, writ denied)
(emphasis added). 
36. At the certification hearing, appellee admitted that under Texas law, he is neither a "physician" nor
a "medical practitioner." In Texas, a "physician" is defined as "a person licensed to practice medicine" in
Texas. See Tex. Occ. Code Ann. § 151.002(a)(12) (Vernon Supp. 2006). The terms "practitioner" and
"practitioner of medicine" include physicians and surgeons. See id. § 151.002(b).
37. We also note that in appellee's reply brief in his breach-of-the-duty-of-confidentiality claim, he 
similarly asserts there is "no evidence that the Patient Class is a multi-state class," despite the fact that the
order certifying the patient class specifically refers to the "geographical dispersal of the members of the
Patient Class throughout the eight States comprising the GEICO Dallas Region." 
38. Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 672 (Tex. 2004); Lopez, 156 S.W.3d at 556 
(noting "courts must resolve any choice-of-law issues the parties have raised before certifying a class in order
to determine how the case will be tried."). 
39. Compaq, 135 S.W.3d at 672. 
40. Id. 
41. We also note there is no evidence suggesting the trial court conducted a choice-of-law analysis for
the multi-state patient class.
42. Compaq, 135 S.W.3d at 673 (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 743 (5th Cir.
1996)). 
43. See id. at 681; Lopez, 156 S.W.3d at 556. 
44. See ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).
45. Bernal, 22 S.W.3d at 434. 
46. Id. at 435.
47. Id. 
48. See N. Am. Mortgage Co. v. O'Hara, 153 S.W.3d 43, 44 (Tex. 2004); Lopez, 156 S.W.3d at 556. 
49. We note that the Texas libel statute establishes a cause of action for libel if the evidence shows
that the writing tended to injure the reputation of the person defamed. See Tex. Civ. Prac. & Rem. Code Ann.
§ 73.001 (Vernon 2005); Swate v. Schiffers, 975 S.W.2d 70, 74 (Tex. App.-San Antonio 1998, pet. denied). 
The effect of pleading libel per se is to eliminate the requirement for pleading or proving special damages, not
to shift the burden for proving the falsity of the allegedly defamatory statements. Schiffers, 975 S.W.2d at 74
(citing Leyendecker & Assoc., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984)). The plaintiff still bears the
burden of proving falsity, as well as the other elements of his cause of action. Id. Thus, we agree with
appellants that "the jury will be faced with deciding if each class member's medical expenses are in fact
'reasonable' in order to determine the defense of truth to the libel claim."
50. Appellants argued that Texas statutes requiring insurers to notify a claimant in writing of the
acceptance or rejection of a claim (and if rejected, the reasons for the rejection) impart a qualified privilege
upon insurers when they send the required notices. 
51. (Emphasis added.). 
52. Nissan, 27 S.W.3d at 592 (citing Bernal, 22 S.W.3d at 435-36) (emphasis added)). 
53. See Lopez, 156 S.W.3d at 557 (holding where record contains no ruling on defendant's special
exceptions and plea to the jurisdiction, trial court should resolve dispositive issues before considering
certification).